IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETH JACKLYN HALTER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO.  4:22-cv-1659 |
| | § | |
| BEAUTY BASICS, INC. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Beth Jacklyn Halter ("Plaintiff") files this Original Complaint against Beauty Basics, Incorporated ("Defendant").

## SUMMARY

1. Plaintiff was employed by Defendant in a supervisory capacity, overseeing multiple training facilities, or schools, for the Corporation, as Regional Executive Director of Operations.

2. Plaintiff suffered discriminatory treatment on the basis of her gender.

3. Plaintiff was subjected by Defendant to an unlawfully hostile work environment, based upon her gender.

4. The sexual discrimination suffered by Plaintiff on basis of her gender affected the terms, condition, and ultimately, the privilege of her employment.

5. Plaintiff engaged in legally protected activity by submitting reports of the hostile conduct on the part of her direct supervisor to the Human Resources Director.

6. Plaintiff was terminated on or about October 2, 2020 in retaliation for the legally protected activity of reporting yet another act of hostile discrimination by her supervisor.

7. Plaintiff's termination was discriminatory and retaliatory in violation of Title VII of the Civil Rights Act of 1964.

## THE PARTIES AND JURISDICTION

8. Plaintiff Beth Jacklyn Halter is a natural person who has standing to file this lawsuit.

9. Defendant Beauty Basics, Inc. (hereinafter, also "BBI") is a corporation headquartered in Hammond, Louisiana, and also registered in the State of Texas, and has continuously had at least fifteen (15) employees.

10. Defendant employed Plaintiff within the confines of the Southern District of Texas, Houston Division.

11. Defendant may be served with this Complaint through its registered agent, CT CORPORATION, at its registered address, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136, or through its counsel.

12. The Court has personal jurisdiction over Defendant based on general jurisdiction.

13. The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act.

14. All conditions precedent to bringing this suit have been occurred or been satisfied.

## FACTUAL BACKGROUND

15. Ms. Halter worked for Defendant for several years, overseeing the operation of multiple training facilities, or schools, for the Corporation as their Regional Executive Director of Operations.

16.     Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of gender. Plaintiff is a female who suffered discrimination on the basis of her gender.

17.     Ms. Halter's direct supervisor at BBI was Mr. Jason Blackwell, whose sister was also in senior management at BBI.

18.     During and throughout the course of Ms. Halter's employment, Mr. Blackwell engaged in inappropriate sexual comments towards Ms. Halter, referring to her body and complimenting her legs, while also making inappropriate references to Ms. Halter's past relationships or boyfriends. This harassment was ongoing throughout the course of Ms. Halter's employment.

19.     Mr. Jason Blackwell's behavior persisted and worsened over the course of years, directly following the patterns of grooming behaviors used by sexual predators. Jason Blackwell went so far as to even encourage his employee, Ms. Halter, to send him inappropriate photos, including inappropriate requests to see her legs. Mr. Blackwell's behavior persisted over several years, with phone calls and text messages thoroughly documenting the inappropriate behavior of Mr. Blackwell towards Ms. Halter.

20.     Mr. Blackwell additionally made references to risks he could get in trouble with his Human Resources Dept, yet still persisted in the harassing behavior towards Ms. Halter. In retrospect, it is now clear that the Human Resources Department of BBI preferred to stand by Jason Blackwell, an individual with a long history of inappropriate sexual comments and behavior but with a family connection higher up in management, rather than stand by or address the complaints of Ms. Halter, who had worked there multiple years, yet received no negative reviews of her job performance prior to her termination.

21. On or about late August/ early September of 2020, Ms. Halter was in a vehicle accident while working for BBI with a facility in Austin, Texas. Ms. Halter reported the accident to her direct supervisor, Mr. Blackwell, telling him she had been "rear-ended". Rather than ask first about her injuries, Mr. Blackwell replied that he hoped she was "in Austin and not in Green Bay with [name of an ex-boyfriend]". Ms. Halter informed Mr. Blackwell of her need for medical treatment.

22. On or about September 24, 2020, after still not hearing back from Mr. Blackwell regarding insurance reimbursement for medical treatments necessary as a result of the accident while working, Ms. Halter was forced to go above the head of Mr. Blackwell, and reached out to Karen Mclaughlin, the V.P. of Human Relations for BBI. Ms. Halter asked her about the procedures necessary for workers compensation reimbursement and to continue necessary treatments as a result of the accident. Plaintiff also reported Mr. Blackwell's inappropriate sexual comment in response to Plaintiff originally reporting the accident to him. Ms. Mclaughlin's attitude was immediately dismissive of Mr. Blackwell's inappropriate comment when it was reported. Ms. Mclaughlin then scheduled a meeting with Ms. Halter for 10:00am on the following day.

23. On or about September 25, 2020, at approximately 10:00 a.m., within 24 hours of Plaintiff asking questions about her worker's compensation claim reimbursement, and within 24 hours of making a sexual harassment complaint to Ms. Mclaughlin, Defendant retaliated against Ms. Halter by informing her they were terminating her employment as of October 2, 2020.

24. Ms. Halter, being terminated less than two weeks after asking questions about her Worker's Compensation claim and necessary reimbursement, had not received any negative feedback on his job performance, and had consistently had positive performance at the company.

25. Ms. Halter had intended to stay at the position with BBI for a great length of time. If Ms. Halter had not been terminated, she could have continued to work in that position at BBI. Instead, she found herself unemployed. Ms. Halter had received no negative reviews or statements from her supervisor, Mr. Blackwell, that her performance was not up to par for the Corporation. To the contrary, Mr. Blackwell's comments, though discriminatory and inappropriate towards Plaintiff, continually stated otherwise.

## TITLE VII CLAIMS OF DISCRIMINATION

26. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

27. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

28. Discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

29. A Title VII hostile work environment sexual harassment claim requires a Plaintiff to show: (1) the work environment was objectively and subjectively offensive; (2) the harassment complained of was based on gender; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability.

30. The ongoing harassment Plaintiff suffered by her direct supervisor was objectively and subjectively offensive. His comments and harassment on the basis of Plaintiff's gender were not isolated incidents, but rather pervasive and ongoing activities, over a time frame of multiple years. The Employer took no steps to remedy the harassment, but instead stood by Plaintiff's

supervisor who had committed the ongoing hostile acts of harassment, the predator Jason Blackwell, whose sister was also in senior management with the Corporation.

31. Plaintiffs who prevail in a Title VII discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

32. Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy. *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992). If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law. *See Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Unlike back pay, front pay refers to future lost earnings. Front pay awards can be substantial. *See, e.g., Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *8-9 (5th Cir. Feb. 1, 2011) (Fifth Circuit decision affirming five-year front-pay award in a discrimination case); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (affirming front-pay award of approximately ten years).

33. Prevailing plaintiffs are entitled to compensatory and punitive damages under Title VII. *See* 42 U.S.C. § 1981A(a)(1).

34. Prevailing plaintiffs are also entitled to attorneys' fees and costs and Plaintiff seeks to recoup these amounts.

## TITLE VII CLAIM OF RETALIATION

35. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

36. The Fifth Circuit has adopted the McDonnell Douglas evidentiary framework for retaliation claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Fabela v. Socorro Independent School Dist.*, (5th Cir. 2003). Under that evidentiary framework, a plaintiff must first establish a prima facie case of retaliation. *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005); *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).

37. To establish a prima facie case of unlawful retaliation under Title VII, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse action against him; and (3) a causal link exists between the protected activity and the adverse employment action. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

38. If the plaintiff makes out a prima facie case of retaliation, then the defendant must articulate a legitimate non-retaliatory reason for the adverse employment decision. *See Baker*, 430 F.3d at 754-55. If the employer does so, the burden shifts back to the employee to establish that the employer's "stated reason is actually a pretext for retaliation." *Baker*, 430 F.3d at 755 (internal citations omitted).

39. "Title VII prohibits an employer from retaliating against an employee because that employee has complained about acts of discrimination at work." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874 (5th Cir. 2003).

40. A plaintiff is not required to establish that an actual violation of Title VII occurred in order to invoke the protections of the anti-retaliation provisions. Rather, a plaintiff only needs to show a reasonable belief that he was being discriminated against and that a complaint was made. *See Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

41. Close temporal proximity between a complaint and termination can be used to prove the causal link between the protected activity and the adverse employment action. *See, e.g.,*

*Cantu v. Vitol, Inc.*, Civil Action No. H-09-0576, 2011 WL 486289, at *10 (S.D. Tex. Feb. 7, 2011) (Rosenthal, J.) (noting that "the Fifth Circuit has found temporal proximity of up to four months sufficient to show a causal link."); *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (observing that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" (internal citations omitted)).

42. The Fifth Circuit may also look at an employee's disciplinary record prior to their protected activity in determining whether a causal link exists to support a claim for retaliation. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)

43. Plaintiff engaged in legally protected activity by reporting discriminatory behavior of her immediate supervisor.

44. On or about October 2, 2020, Plaintiff was terminated in retaliation for engaging in protected activity.

45. A causal link exists between Plaintiff's protected activity and Plaintiff's termination on or about October 2, 2020.

46. Moreover, Defendant's purported reason for Plaintiff's termination is false. Plaintiff had not received any negative reviews or feedback concerning her job performance from her supervisor, Mr. Blackwell.

47. Likewise to a Title VII discrimination claim, Plaintiffs who prevail in a Title VII retaliation claim are also entitled to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs. See supra.

48. Defendant retaliated against Plaintiff for making a discrimination/ sexual harassment complaint, assisting or participating in a discrimination investigation, and otherwise opposing discrimination by the employer.

49. Plaintiff made a discrimination/ harassment complaint, assisted and participating in a discrimination investigation, and opposed a discriminatory practice by Defendant, suffered adverse employment actions as a result of that, Defendant terminated Ms. Halter's employment and otherwise discriminated against her. There is a causal connection between the making of the discrimination/ harassment complaint, and the assistance and participation in a discrimination investigation, and opposition to the discriminatory practice and the adverse employment actions. Defendant's retaliatory actions violated not only Federal Law, but the Texas Commission on Human Rights Act.

50. All conditions precedent to this suit have been fulfilled.

## **RETALIATION OF WORKER'S COMPENSATION CLAIM**

51. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

52. In the alternative, Plaintiff's reporting of a worker's compensation claim may have also, in violation of the law, been a determining factor in Plaintiff's employment.

53. Chapter 451 of the Texas Labor Code prohibited BBI from discharging or discriminating against Ms. Halter on account of her workers compensation claim. BBI had actual knowledge of the injury, actual knowledge of the claim, and acted with malice towards Ms. Halter for filing the claim. Even though Ms. Halter was capable of continuing work in the existing position without even an accommodation necessary for her injuries, Defendant terminated her for baseless reasons. Accordingly, BBI violated Chapter 451 when it terminated Ms. Halter.

54. For the foregoing reasons, Defendant is liable to Ms. Halter under Chapter 451 of the Texas Labor Code for back pay, front pay or reinstatement, compensatory damages including

damages for emotional distress, exemplary or punitive damages, attorneys' fees, pre- and post-judgment interest as provided by law, and all costs of court.

## JURY DEMAND

55. Plaintiff demands a jury trial.

## PRAYER

Plaintiff asks that she be awarded a judgment against Defendant for the following:

   a. Actual damages in the amount of lost back pay, lost benefits, and other economic losses;
   b. Reinstatement of front-pay;
   c. Compensatory damages;
   d. Punitive damages;
   e. Prejudgment and post-judgment interest;
   f. Court costs;
   g. Attorney's fees; and
   h. All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Sean C. Timmons_____
Sean Timmons
Texas Bar No. 24067908
S.D. Texas ID No. 2100795
Tully Rinckey, PLLC
2925 Richmond Avenue
Houston, TX 77098
stimmons@tullylegal.com
(518) 218-7100
(315) 238-5200

ATTORNEY FOR PLAINTIFF
BETH JACKLYN HALTER