IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETH JACKLYN HALTER, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 4:22-cv-1659 |
| | § | |
| BEAUTY BASICS, INC., | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This case is before the Court on Plaintiff's Motion for Default Judgment.[1] ECF 22; ECF 23. On May 23, 2023, as Plaintiff requested (ECF 22 at 4), the Court conducted a hearing on the record in accordance with Federal Rule of Civil Procedure 55(b)(2) to determine the amount of damages and establish the truth of allegations by evidence.

Having considered Plaintiff's submissions, testimony at the hearing, and the law, the Court recommends that Plaintiff's Motion for Default Judgment be granted in part and default judgment be entered in Plaintiff's favor against Beauty Basics, Inc. as more specifically set forth below.

**I.    Procedural Background**

Plaintiff filed her Complaint on May 23, 2022. ECF 1. On September 22,

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 10.

2022, the Court dismissed the case without prejudice for lack of timely service but subsequently granted Plaintiff's motion to vacate the dismissal order and reopened the case upon proof of service. ECF 6; ECF 9. On November 28, 2022, the Court ordered Plaintiff to request entry of default and file a motion for default judgment or risk a second dismissal for failure to prosecute. ECF 12.

Based on Affidavits attesting that Beauty Basics, Inc. was properly served with the Complaint and Summons on June 16, 2022 by effecting personal service on Defendant's registered agent, and Defendant's failure, through counsel or otherwise, to file an Answer or otherwise respond, the Court granted Plaintiff's request for entry of default. ECF 16. The Clerk entered a default against Beauty Basics, Inc. on December 15, 2022. ECF 17. After extensions of time, on February 13, 2023, Plaintiff filed and served a copy of her Motion for Default Judgment in accordance with Local Rule of the Southern District of Texas 5.5. Thereafter, on April 23, 2023, Plaintiff filed her Declaration, which was inadvertently omitted from the initial motion. ECF 23. Defendant did not respond to the Motion for Default Judgment.

**II.    Analysis**

Plaintiff's Complaint asserts causes of action under Title VII against Beauty Basics, Inc. for a hostile work environment due to sexual harassment and for retaliation in response to Plaintiff's report of sexual harassment. Alternatively, Plaintiff's Complaint alleges a violation of Chapter 451 of the Texas Labor Code for

retaliation in response to Plaintiff's workers' compensation claim. Counsel for Plaintiff unequivocally stipulated on the record at the May 23, 2023 hearing that Plaintiff is moving for Default Judgment *only* on her Title VII claims.

### A. Default Judgment as to Defendant's Liability

As a result of Defendant's default, the factual allegations in Plaintiff's Complaint are uncontested and deemed true. FED. R. CIV. P. 8(b)(6) (providing that an allegation other than the amount of damages is admitted if a responsive pleading is required and the allegation is not denied). However, the Court may grant judgment by default "only so far as it is supported by well-pleaded allegations, assumed to be true." *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). The Court may also consider testimony introduced at a "prove-up hearing" to the extent it establishes the truth of the matters pleaded. *Id.*

### 1. Plaintiff's Title VII Hostile Work Environment Claim

Plaintiff alleges in her Complaint that she was employed by Defendant for several years prior to her termination in October 2020. ECF 1 ¶ 6. The Complaint alleges that Plaintif's supervisor, Jason Blackwell, "engaged in inappropriate sexual comments towards [Plaintiff], referring to her body and complimenting her legs, while also making inappropriate references to [Plaintiff's] past relationships or boyfriends." *Id.* ¶ 18. Blackwell encouraged Plaintiff to send him "inappropriate" photos, requested to see her legs, and sent inappropriate texts. *Id.* ¶ 19. Blackwell

once told Plaintiff that he could get in trouble with Human Resources for his behavior. *Id. ¶* 20. Plaintiff attributes Defendant's tolerance of Blackwell's behavior to the fact that Blackwell's sister was in senior management at Defendant. *Id.* The Complaint alleges that prior to her termination Plaintiff had received positive job reviews and planned to continue in her position. *Id.* ¶¶ 24-25.

At the hearing, Plaintiff explained that she was hired by Defendant in 2014 but the harassment began around 2016, and mostly consisted of off-hand comments about her legs and her appearance that made her "nervous" and "uncomfortable." Plaintiff described an incident after she had an automobile accident in August 2020 when Blackwell made an inappropriate sexual joke about her being "rear-ended" by a former boyfriend.

When a Plaintiff alleges that sexual harassment by her supervisor created a hostile work environment, she must plead facts that, taken as true, establish that the supervisor's actions constituted severe or pervasive sexual harassment. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). Absent severe and pervasive harassment, the employer cannot be held liable for the supervisor's actions. *Id.* To be actionable, the harassment must have been both objectively and subjectively offensive and must have affected a term, condition, or privilege of employment. *Allen v. Our Lady of the Lake Hosp., Inc.*, No. 22-30546, 2023 WL 3267840, at *3 (5th Cir. May 5, 2023). In deciding whether Plaintiff's well-pleaded complaint, as

confirmed by her testimony, establishes actionable harassment, the Court considers "(1) 'the frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted).

Having reviewed the Complaint and considered Plaintiff's testimony, the Court concludes that she is not entitled to default judgment on her Title VII hostile work environment claim. Assuming that Blackwell's conduct was subjectively and objectively offensive, Plaintiff fails to allege his conduct affected a term, condition, or privilege of her employment. Although Plaintiff alleges Blackwell's behavior continued for years, she has alleged no facts and presented no evidence showing his behavior impacted any condition of her work or her ability to do her job. In fact, she testified that she always received positive performance reviews and she enjoyed her job and intended to keep working there. She never sought counseling prior to her termination, and the Complaint does not allege any facts to indicate Blackwell's behavior caused her mental anguish. For these reasons, the Court concludes that the facts alleged and to which Plaintiff testified do not rise to the level of severe or pervasive actionable harassment.

### 2. Plaintiff's Title VII Retaliation Claim

An employer is liable for retaliation under Title VII if an employee proves: (1)

5

she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

Plaintiff alleges that she reported Blackwell's harassment to Defendant's Human Resources Director on September 24, 2020. ECF 1 ¶ 22. Thus, Plaintiff has established the "protected activity" element of her retaliation claim. Within 24-hours of Plaintiff's report, Defendant informed Plaintiff that her employment was terminated effective October 2, 2020. *Id.* ¶ 23. Thus, Plaintiff has established an adverse employment action. Plaintiff testified that at the time she was terminated she was told only that she was not following the "company vision." Prior to her termination, she had received only positive performance reviews and had never been disciplined. The extremely close temporal proximity between her protected activity and her termination, as well as her prior positive performance reviews and the lack of an objective reason for her termination, establish a causal link between her protected activity and her adverse employment action sufficient to support entry of default judgment in Plaintiff's favor on her Title VII retaliation claim.

### B. Plaintiff's Evidence of Damages

Plaintiff's Complaint seeks damages for back pay and lost benefits, front pay, compensatory damages, punitive damages, pre-judgment and post-judgment

interest, court costs, and attorney's fees. ECF 1 at 10. The court addresses each below.

### 1. Backpay

In her Declaration in support of default judgment and at the hearing, Plaintiff testified that her salary at the time of her termination was $132,785.00 and she was provided with other benefits, such as a company vehicle, valued at $17,215 per year. ECF 23 ¶ 8. She was unemployed for 91 days post-termination before accepting a job at the significantly reduced annual salary of $101,538.48. *Id.* ¶ 9. In September 2021, she changed jobs again for an annual salary of $105,000.00. *Id.* Based on the above facts, Plaintiff calculates her lost wages and benefits as $117,703.83 ($36,986.31 for the first 91 days after termination and $81,017.52 for the following two years). *Id.* ¶¶ 10-11.

Plaintiff's Declaration provides sufficient evidence to support entry of default judgment awarding her $117,703.83 in past lost wages and benefits. *See Vaughn v. Nebraska Furniture Mart, LLC*, No. 3:19-CV-1220-C-BK, 2020 WL 1695695, at *3-5 (N.D. Tex. Mar. 12, 2020), *report and recommendation adopted*, No. 3:19-CV-1220-C, 2020 WL 1694782 (N.D. Tex. Apr. 7, 2020) (entering award for back pay after defendant's default in Title VII case).

### 2. Front pay and compensatory damages

A court has discretion to award front pay as a form of compensatory damages

when a plaintiff's reinstatement to her former position is not feasible. *Id.* (citing *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) and *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)); 42 U.S.C. § 1981a(b)(3) (compensatory damages can be awarded for "future pecuniary losses."). Plaintiff's Declaration in support of default judgment asserts that $600,000.00, or four times her annual salary package, is a "reasonable calculation of compensatory damages," including compensation for years of emotional distress from sexual harassment. ECF 23 ¶ 12. At the hearing, counsel characterized the $600,000 request as mental anguish damages.

Unlike back pay, "[c]ompensatory damages for emotional harm, including mental anguish, will not be presumed simply because the complaining party is a victim of discrimination." *Vaughn*, 2020 WL 1695695, at *5. Moreover, Title VII caps total compensatory (including future pecuniary losses) and punitive damages recoverable against employers with more than 14 but fewer than 101 employees at $50,000.00. The caps for employers with more than 100 but fewer than 201 employees, more than 200 but fewer than 501 employees, and more than 500 employees are $100,000.00, $200,000.00, and $300,000.00 respectively. 42 U.S.C.A. § 1981a(b)(3). Plaintiff has alleged only that Defendant continuously employed at least 15 employees. ECF 1 ¶ 9. Even if Plaintiff had alleged the Defendant employed more than 500 employees, she still could not recover the

8

$600,000.00 in compensatory damages she requests.

Further, Plaintiff has not submitted any evidence to establish "the nature and extent of the harm," which plaintiffs generally establish by medical or psychological records or other evidence demonstrating emotional distress. *Id.* (citing *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013)); *see also Senegal v. TAS Foods, LLC*, No. CV H-18-1734, 2019 WL 2568630, at *2 (S.D. Tex. June 21, 2019) (holding that "a plaintiff must provide evidence of mental anguish and suffering to a degree of specificity which may include 'corroborating testimony or medical or psychological evidence.'" (quoting *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 470 (5th Cir. 2001))). Plaintiff testified that after her termination she attended one counseling session but was not comfortable with the process and did not go back. She testified that recalling the circumstances of her termination in preparation for her testimony at the hearing made her "anxious," but she gave no details regarding her medical or psychological condition. She did not describe any mental anguish or suffering during her employment other than feeling "uncomfortable" about the sexual comments from Blackwell. The Court finds no well-pleaded facts to support an award of front pay or compensatory damages in this case.

### 3. Punitive damages

Plaintiff believes "a reasonable calculation of punitive damages" to be $1,435,407.66, or two times her other requested damages. ECF 23 ¶ 13. As noted

9

above, Plaintiff has alleged only that Defendant continuously had at least 15 employees. ECF 1 ¶ 9. She has neither alleged nor presented evidence that Defendant had at least 101 employees. *See* Thus, Plaintiff's recoverable punitive damages are also capped at $50,000.00. 42 U.S.C.A. § 1981a(b)(3).

Moreover, punitive damages are not available in every case in which a plaintiff proves discrimination. The Fifth Circuit has held that a Title VII plaintiff is entitled to punitive damages upon proof that the defendant acted with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 467 (5th Cir. 2013) (citing 42 U.S.C. § 1981a(b)(1)). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). In this case, Plaintiff's Complaint alleges:

> [T]he Human Resources Department of BBI preferred to stand by Jason Blackwell, an individual with a long history of inappropriate sexual comments and behavior but with a family connection higher up in management, rather than stand by or address the complaints of Ms. Halter, who had worked there multiple years, yet received no negative reviews of her job performance prior to her termination.

ECF 1 ¶ 20. Plaintiff alleges facts showing Defendant acted unfairly but, taking those facts as true, Plaintiff has failed to show Defendant acted with malice or reckless indifference by knowingly violating federal law. Thus, Plaintiff has not met her burden to establish her entitlement to an award of punitive damages.

10

### 4. Attorney's fees and costs

As the prevailing party on her Title VII retaliation claim, Plaintiff is entitled to an award of reasonable and necessary attorney's fees as part of her costs. *Monroe v. Houston Indep. Sch. Dist.*, No. 21-20642, 2023 WL 1434280, at *4 (5th Cir. Feb. 1, 2023) (citing 42 U.S.C. § 2000e-5(k)). To determine a reasonable fee, the Court calculates a lodestar equal to the number of hours expended by the prevailing rate in the community for type of work performed. *Id.* The Court may then enhance or decrease the lodestar based on what are known as the 12 *Johnson* factors, the most important of which is the degree of success attained.

Plaintiff did not present a Declaration in support of attorney's fees with her Motion for Default Judgment. At the hearing, Plaintiff's counsel, Sean Timmons, gave sworn testimony regarding his attorney's fees. Timmons testified that he has been licensed to practice since 2009, worked with the Judge Advocate General's Corps, and since approximately 2019 has practiced primarily in federal court in employment law matters. He further testified that he worked in conjunction with co-Counsel David Rowe, who is not admitted to the federal bar and was admitted pro hac vice upon Timmon's oral motion solely for purposes of presenting Plaintiff's testimony at the default judgment hearing.

Timmons testified that his rate is $400.00 per hour, and he estimated he worked 10 hours on this case. He also testified that his paralegal worked 3 hours at the rate

of $100.00 per hour. The Court concludes that $400.00 is a reasonable rate for this type of work in this geographic area, and 10 hours is a reasonable amount of time for drafting the complaint, conferring with Plaintiff and co-counsel, and pursuing default judgment. Therefore, the Court recommends an attorney's fee award of $4,300 (which includes the $300 paralegal fee). In addition, Plaintiff is entitled to recover $402.00 for her federal court filing fee pursuant to 28 U.S.C. § 1920.

### 5. Prejudgment and postjudgment interest

As the prevailing party in her Title VII case, Plaintiff is entitled to pre-judgment interest on her back pay award and post-judgment interest. *Senegal v. TAS Foods, LLC*, No. CV H-18-1734, 2019 WL 2568630, at *4 (S.D. Tex. June 21, 2019). The Court has discretion in formulating an award of prejudgment interest, but "[i]n the absence of a compelling basis for an increased rate, the current federal statutory post-judgment interest rate is an appropriate pre-judgment interest rate to make the plaintiff 'whole.'" *Id.* (citation omitted). Therefore, the Court recommends that Plaintiff be awarded prejudgment interest at the applicable federal rate on her backpay award of $117,703.83 beginning on the date of her termination, October 2, 2020, through the entry of final judgment, and postjudgment interest at the applicable federal rate on the total amount of her judgment, including fees and costs, from the date of entry until paid.

### III.   Conclusion and Recommendation

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and a Final Default Judgment be entered in Plaintiff's favor on her Title VII retaliation claim in the amount of $117,703.83 for her lost wages and benefits, $4,300.00 for attorney's fees, $402.00 for costs, prejudgment interest on the award of $117,703.83 at the applicable federal rate from October 2, 2020 until the date of entry of final judgment, and post judgment interest on the total award of $122,405.83 from the date of entry of final judgment until paid in full.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 25, 2023, at Houston, Texas.

*Christina A. Bryan*
Christina A. Bryan
United States Magistrate Judge
